UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLONIZE MEDIA, INC., | Case No.: 1:20-cv-01053-DAD-SAB |
| Plaintiff, | ORDER DENYING WITHOUT PREJUDICE PLAINTIFF COLONIZE MEDIA, INC.'S APPLICATION TO SERVE DEFENDANT TATE A. PALMER BY PUBLICATION |
| v. | |
| TATE A. PALMER, et al., | |
| Defendants. | (ECF No. 29) |

**I.**

**BACKGROUND**

Plaintiff's first amended complaint alleges that Tate A. Palmer ("Defendant") was hired to act as chief operations manager for Colonize Media, Inc. ("Plaintiff" or "Colonize") on or about October 1, 2015. (First Am. Compl. ("FAC"), ¶ 41, ECF No. 16.) Defendant Palmer was responsible for overseeing the digital distribution and monetization of over 250,000 sound recordings under Plaintiff's management and administration. (Id., ¶ 42.) Defendant Palmer's duties included "(i) interfacing and negotiating with the Retail Platforms; (ii) creating and managing the technological structures and protocols for the digital storage, distribution and monetization of the sound recordings under Colonize's management and administration; and (iii) developing business and technological protocols for maximizing the revenue from the distribution and monetization of the sound recordings under

Colonize's management and administration." (Id., ¶ 43.)

Defendant Palmer was also responsible for the creation and maintenance of Plaintiff's data and intellectual protection structures, processes and protocols. (Id., ¶ 44.) He was given access to all of Plaintiff's proprietary and confidential business information and was expressly made aware that this information was to be kept confidential and was for Plaintiff's use only. (Id., ¶¶ 45-46.)

Around March 2019, Plaintiff discovered that Defendant Palmer had organized and started his own digital music distribution company in January of 2019 while still employed by Plaintiff and using the same proprietary knowledge, information, and processes learned while an officer of Plaintiff. (Id., ¶ 49.) Plaintiff also discovered that Defendant Palmer was soliciting existing clients of Plaintiff, as well as prospective clients that were being targeted by Plaintiff, while he was still employed by Plaintiff. (Id., ¶ 50.) Plaintiff terminated Defendant Palmer's employment on March 20, 2019. (Id., ¶ 51.) Thereafter, Plaintiff discovered that Defendant Palmer had stolen a hard drive containing Plaintiff's SR codes and metadata as well as a laptop containing the only copy of Plaintiff's proprietary computer program. (Id., ¶ 52.) Plaintiff contacted Defendant Palmer and demanded the items be returned but he refused. (Id., ¶ 53.) Defendant Palmer also refused to turn over access codes to accounts with retail platform affiliates and Plaintiff was not able to access funds that are due to them. (Id., ¶¶ 55-56.) It took a significant amount of time to access these funds and Plaintiff was unable to timely pay some of its clients. (Id., ¶¶ 60, 61.)

In about August 2019, Plaintiff came to learn that Defendant Palmer had obtained new employment with Tango Media, LLC ("Tango") a competitor of Plaintiff and believes that Defendant Palmer gave copies of Plaintiff's SR codes, metadata, and proprietary computer program to them. (Id., ¶¶ 64, 65.) Plaintiff brings this action alleging violations of the Defending Trade Secrets Act, 18 U.S.C. § 1836; the Computer Fraud and Abuse Act, 18 U.S. C. § 1030 et seq. and California law.

On July 29, 2020, Colonize Media, Inc. ("Plaintiff") filed this action against Tate A. Palmer; Triwolf Media, LLC ("Triwolf"); and Tango. (ECF No. 1.) Plaintiff filed a first amended complaint on December 4, 2020. (ECF No. 16.) On January 11, 2021, Tango and Triwolf filed an answer to the first amended complaint. (ECF No. 19.) On January 19, 2021, an order issued extending the time for Plaintiff to serve Defendant Palmer ninety days. (ECF No. 22.) On April 2, 2021, a stipulation was

| | |
|---|---|
| 1 | filed to dismiss Tango and Triwolf from this action and an order issued directing the Clerk of the Court |
| 2 | to terminate them as defendants. (ECF Nos. 27, 28.) On April 19, 2021, Plaintiff filed an application |
| 3 | to serve Defendant Tate A. Palmer by publication. (ECF No. 29.) |

**II.**

**LEGAL STANDARD**

Under the Federal Rules of Civil Procedure an individual can be served by any of the following "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Rule 4 also provides that proper service can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). There is no service by publication under federal law, therefore, California's statute for service by publication will govern whether such service is proper in this action.

California Code of Civil Procedure 415.50(a)(1) provides that "[a] summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that either: (1) A cause of action exists against the party upon whom service is to be made or he or she is a necessary or proper party to the action."

Under California law, "[c]onsistent with the notions of fair play and due process, substituted service by publication is 'a last resort' when 'reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication' has been exercised." Indian Hills Holdings, LLC v. Frye, 337 F.R.D. 293, 299 (S.D. Cal. 2020) (quoting Calvert v. Al Binali, 29 Cal.App.5th 954, 963 (2018)). "Personal service remains the method of choice under the statutes and the constitution," and "[w]hen substituted or constructive service is attempted, strict compliance with the letter and spirit of the statutes is required." Indian Hills Holdings, LLC, 337 F.R.D. at 299 (citations omitted).

///

# III.

# DISCUSSION

Plaintiff asserts that Defendant Palmer's LinkedIn profile stated in August that he is the chief administrative officer of Triwolf. Plaintiff contends that numerous attempts have been made to locate and serve Defendant Palmer which have been unsuccessful and seeks to serve Defendant Palmer by publication.

### A. Plaintiff Has Failed to Establish the Existence of a Valid Cause of Action Against Defendant Palmer in this Action

Here, Plaintiff has submitted several declarations in support of the application for service by publication. Kevin Berger, an officer of Colonize, states that this lawsuit and the application concern the ownership of, and the right to distribute and otherwise exploit, various sound recordings and other assets. (Decl. of Kevin Berger ("Berger Decl."), ¶ 4, ECF No. 29-1.) There is also a declaration from counsel addressing the attempts to determine the status of Defendant Palmer and the attempts to serve him. Mr. Berger states that early in the litigation defense counsel represented that Defendant Palmer is an employee of Triwolf and an independent contractor of Tango. (Decl. of Thomas P. Griffin, Jr. ("Griffin Decl."), ¶ 3, ECF No. 29-2.) Subsequently, defense counsel represented that Defendant Palmer is only an independent contractor for Tango, and is not an officer or employer of either Triwolf or Tango. (Id.) However, Defendant Palmer's LinkedIn profile stated that he was the chief operating officer of Triwolf in August 2020. (Id., ¶ 4.)

Under California law, "[f]or the purpose of service by publication, the existence of a cause of action is a jurisdictional fact." Harris v. Cavasso, 68 Cal.App.3d 723, 726 (1977). The requesting party must submit an affidavit containing a statement of some fact that would be legal evidence that the cause of action exists for the court to have jurisdiction to order service by publication. Harris, 68 Cal.App.3d at 726.

"When jurisdiction is sought to be established by constructive service, the statutory conditions for such service must be strictly complied with or the judgment is subject to collateral attack." Donel, Inc. v. Badalian, 87 Cal.App.3d 327, 334 (1978). The affidavit filed in support of the motion for substitute service must contain independent evidentiary support in the form of a sworn statement of facts to support a cause of action against the defendant, and if it does not, the Court does not have

4

jurisdiction to order service by publication. Harris, 68 Cal.App.3d at 726–27.

Generally, it is the plaintiff who makes the affidavit as to the cause of action. Judicial Council Comments Cal., Civ. Proc. Code § 415.50. Here, while the affidavit submitted in support of the motion contains a statement that would support Defendant Palmer being an officer of Triwolf, there are no facts set forth within the declaration to support that a cause of action exists against Defendant Palmer. Because the statutory conditions for service by publication "must be strictly complied with or the judgment is subject to collateral attack[;]" Donel, Inc., 87 Cal.App.3d at 334, it must appear from the declaration that "a cause of action exists against the party upon whom service is to be made[,]" Cal. Civ. Proc. Code § 415.50(a)(1).

While the declarations state that this matter concerns the ownership of, and the right to distribute and otherwise exploit, various sound recordings and other assets, (Berger Decl., ¶ 4), this is insufficient to demonstrate that a cause of action exists against Defendant Palmer. "Section 415.50(a)(1) requires that the plaintiff provide independent evidentiary support, in the form of a sworn statement of facts, for the existence of a cause of action against each defendant whom service by publication is requested." Indian Hills Holdings, LLC, 337 F.R.D. at 302 (quoting Rose v. Seamless Fin. Corp. Inc., No. 11CV240 AJB KSC, 2013 WL 1285515, at *3 (S.D. Cal. Mar. 26, 2013)). California courts have held that an declaration by counsel, and even a verified complaint, are insufficient to meet the jurisdictional requirement. Indian Hills Holdings, LLC, 337 F.R.D. at 302; see Harris, 68 Cal.App.3d at 726 ("the verification of the complaint by plaintiffs' counsel on his information and belief is no substitute for the sworn statement of facts which section 415.50 requires of the affiant.").

There are no facts alleged in Mr. Berger's declaration that would support a cause of action against Defendant Palmer and the jurisdictional requirement to order publication is missing based on the lack of compliance with the statute. Accordingly, the application shall be denied without prejudice. In any future application, Plaintiff will need to set forth sufficient facts within the declarations themselves to demonstrate that a cause of action exists against Defendant Palmer.

**B.      Plaintiff Has Not Demonstrated Reasonable Diligence**

When a person is entitled to due process, process which is a mere gesture is not sufficient. Donel, Inc., 87 Cal.App.3d at 332; Watts v. Crawford, 10 Cal.4th 743, 749 n.5 (1995). Service by

publication is appropriate only where after reasonable diligence, the defendant's whereabouts and his dwelling place or usual place of abode cannot be ascertained. Watts, 10 Cal.4th at 749 n.5. However, service by publication is a "last resort," so the courts require a plaintiff "to show exhaustive attempts to locate the defendant." Id. "Reasonable diligence" in attempting to serve by other methods connotes:

> [A] thorough, systematic investigation and inquiry conducted in good faith . . . . A number of honest attempts to learn defendant's whereabouts or address by inquiry of relatives, friends, and acquaintances, or of an employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are likely sources of information, and consequently must be searched before resorting to service by publication. However, the showing of diligence in a given case must rest on its own facts and neither single formula nor mode of search can be said to constitute due diligence in every case.

Kott v. Superior Court, 45 Cal.App.4th 1126, 1137–38 (1996) (internal citations and quotations omitted).

Here, Mr. Berger asserts that he was informed by Mr. Villalobos, a principle of Triwolf and Tango, that Defendant Palmer was in the office almost every day. (Berger Decl., ¶ 2.) However, when he asked for the address of the Los Angeles, California location, Mr. Villalobos "chose not to share that address." (Id., ¶ 3.) Mr. Griffin states that he has made numerous requests by email and phone calls to defense counsel for Defendant Tate's address. (Griffin Decl., ¶ 5.) Defense counsel stated that he would reply to interrogatories within a day seeking the information, and interrogatories were emailed requesting Defendant Tate's residential address and all prior residential addresses on November 20, 2020. (Id., ¶ 5.)

The interrogatories were served by mail on November 24, 2020. (Id., ¶ 6.) On December 1, 2020, defense counsel replied asking for a call to discuss the matter on December 3, 2020. (Id., ¶ 7.) During the call, defense counsel stated that the addresses would not be provided because Defendant Palmer had requested that the address not be provided, the addresses are confidential information, and the interrogatories were premature. (Id.) During this call, counsel stated that Defendant Palmer claimed to have counsel, and it was requested that Defendant Palmer have his attorney make contact with counsel for Plaintiff. (Id., ¶ 8.) On December 8, 2020, Plaintiff's counsel set an email to defense counsel asking if the interrogatories would be answered within thirty days, and the email was ignored. (Id., ¶ 9.) Thereafter, this matter was settled between Plaintiff, Triwolf, and Tango which resolved the

1  remainder of the case. (Id., ¶ 10.) Defense counsel asserted that they would not provide initial
2  disclosures and would not be participating in discovery in this action as the case had been settled as to
3  Triwolf and Tango. (Id., ¶ 14.)

4        Plaintiff asserts that it has diligently attempted to serve Defendant Palmer at three addresses in
5  the Los Angeles, California area and an address in Austin, Texas. (Id., ¶ 15.) Plaintiff has attempted to
6  serve at a business address and was informed that none of the defendants had been tenants at that location
7  for a couple years. (Id., ¶ 16.) The process server attempted to serve at two different residential
8  addresses and were unsuccessful. (Id.) The process server attempted to communicate with nearby
9  residents and searched for mailboxes and apartment managers to confirm Defendant Palmer's residency
10 but were unsuccessful. (Id.)

11       Plaintiff learned that Defendant Palmer may be residing in Austin, Texas and attempted to serve
12 at a residential address there. (Id., ¶ 17.) Neighbors informed the process server that Defendant Palmer
13 did not live there. (Id.) Plaintiff states that social media pages and entity information from the Secretary
14 of State and others were reviewed to identify the Austin, Texas addresses and a second unsuccessful
15 attempt at service was made. (Id., ¶ 18.)

16       To satisfy the burden to show that reasonable diligence to locate Defendant Palmer, Plaintiff
17 must provide details as to the steps actually taken to locate Defendant Palmer. While Plaintiff states
18 that service has been attempted at a multiple addresses, there is no information provided as to how the
19 addresses were identified as belonging to Defendant Palmer. California requires exhaustive measures
20 "to discover the defendant's whereabouts and confirm his property holdings, including: 'searching
21 phone books, online people search tools, voter registries, or other common sources of information, or
22 by hiring a private investigator'; 'contacting relatives, friends, or neighbors'; and contacting the co-
23 defendant (who had been served) for the defendant's contact information." THC-Orange Cty. Inc. v.
24 Valdez, No. 17-CV-01911-LB, 2017 WL 2171185, at *2 (N.D. Cal. May 17, 2017) (quoting Castillo-
25 Antonio v. Azurdia, No. C-13-05709 DMR, 2014 WL 4060219 (N.D. Cal. Aug. 14, 2014)).

26       Although Plaintiff asserts that numerous attempts have been made to serve Defendant Palmer,
27 the declarations contain no information as to how those addresses were identified and what if any
28 searches had been conducted to locate Defendant Palmer other than a social media and entity search

which indicated that Defendant Palmer may be residing in Austin, Texas. There is no information provided to demonstrate that Defendant Palmer resided at any of the addresses at which service was attempted. Further, Defendant Palmer worked for Plaintiff and it would be reasonable that Plaintiff would have an email address for him. There is no indication that any attempts were made to contact Defendant Palmer by emailing him which is also relevant to Plaintiff's diligence. THC-Orange Cty. Inc., 2017 WL 2171185, at *3.

Finally, Plaintiff also states that subpoenas will be issued to obtain Defendant Palmer's address. Therefore, it appears that Plaintiff may be able to obtain an address for Defendant Palmer through the response to the subpoena and the request for service through publication is premature.

Although the efforts that Plaintiff set forth to serve Defendant Palmer are somewhat indicative of reasonableness, Plaintiff's efforts as described in the application "do not alone rise to the requisite level of both thorough and systematic." Wileman Bros. & Elliott v. Y Farms, LLC, No. 1:19-CV-00909-NONE-BAM, 2020 WL 3127934, at *3 (E.D. Cal. June 12, 2020) (citations omitted). Due to the lack of detail as to actual efforts made to obtain a current address for service, the Court is precluded from finding that Plaintiff has met the reasonable diligence standard to order service by publication. For the foregoing reasons, the Court finds that Plaintiff has not demonstrated reasonable diligence in attempting serve Defendant Palmer. Accordingly, the application to serve Defendant Palmer by publication shall be denied. In any future application, Plaintiff needs to set forth the efforts made to identify an address for Defendant Palmer.

Additionally, although Plaintiff seeks to serve by publication in the Daily News for Los Angeles, there is also an assertion that Defendant Palmer's most recent address may be Austin, Texas. Pursuant to section 415.50, "[t]he court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party." Cal. Civ. Proc. Code § 415.50(b). It is unclear from the current application whether publication in Los Angeles would provide notice to Defendant Palmer of this action or if notice would be required to be published in Austin, Texas. Any renewed application should explain how publication in the newspaper proposed would likely give

personal notice to Defendant Palmer of this action.

**C.    Extension of Time to Effect Service on Defendant Palmer**

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

"At a minimum, 'good cause' means excusable neglect." Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991). The court determines on a case by case basis whether good cause for the delay has been shown. Oyama v. Sheehan, 253 F.3d 507, 512 (9th Cir. 2001). The Ninth Circuit has also held that district courts have broad discretion under Rule 4(m) to extend time for service even without a showing of good cause. See Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009). The Advisory Committee's notes to Rule 4(m) also state that the rule "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed [90] days, and authorizes the court to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown." Fed. R. Civ. P. 4, Advisory Committee's note.

In light of the difficulties Plaintiff has encountered in locating Defendant Palmer to effect service, the Court will grant Plaintiff one final extension of time to effect service of process on Defendant Palmer or file a second application to serve by publication.

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff Colonize Media's application to serve Defendant Tate A. Palmer by publication is DENIED WITHOUT PREJUDICE;

2. The time for Plaintiff to effect service of process on Defendant Palmer is extended **sixty (60) days** from the date of entry of this order;

3. Within **sixty five (65) days** of the date of entry of this order, Plaintiff shall either file proof that Defendant Palmer has been served with the summons and complaint or a

9

second application to effect service by publication; and

4. Failure to serve in compliance with this order will result in the recommendation that this action be dismissed for failure to serve in compliance with Rule 4 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: **May 6, 2021**

_____
UNITED STATES MAGISTRATE JUDGE